UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 13-28-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STEPHEN MOLEN, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

"Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[1] In the present case, it is unfortunate that the Assistant United States Attorney ("AUSA") responsible for this case has been reluctant to explain the basis for the decision to dismiss charges against the defendant. [*See* Record No. 44; Transcript of 11/22/13 Pre-Trial Conference.] And it is equally troubling that the AUSA now argues that this Court lacks authority to even question the government's rationale for its actions. [Record No. 45-1, pp. 5-7]

Although not proven, the charges in this case are quite serious and should be matters of great public concern. The indictment alleges that Defendant Stephen Molen, while performing duties as a deputy sheriff for Pulaski County, Kentucky, violated the civil rights of two unidentified citizen by assaulting them without justification. One assault allegedly occurred on October 2, 2009, while the second occurred approximately two years later. [Record No. 1; Indictment] There is no indication that any internal action was taken by Molen's employer to

---

[1]    Louis D. Brandeis, Other People's Money, Chapter V (What Publicity Can Do) (1914).

correct or punish this behavior. And based upon other evidence the government would seek to introduce at trial, it would appear that the defendant engaged in similar, alleged conduct over an extended period of time.

The matter was presented to a federal grand jury and that body determined that probable cause supported the two charges. Presumably, at the time the matter was presented for the grand jury's consideration, the government intended to prosecute the matter and considered the cost of doing so. The Court also assumes the United States evaluated the effect the prosecution would have on witnesses and victims of the alleged abusive conduct. Two months later, a separate federal grand jury in the Western District of Kentucky returned a second indictment, charging Molen with a similar offense in that district.[2] Again, the Court assumes the prosecuting authorities evaluated those same factors and determined that the grand jury's action was warranted under the facts presented.

The pre-trial conference in this case was scheduled for November 22, 2013. However, three days before that conference, the parties jointly moved the Court to continue the matter. For the first time, the parties disclosed that they had entered into a plea agreement addressing the charges in both districts. Under this agreement, Molen would enter a guilty plea to the charge

---

[2] On November 27, 2013, Defendant Molen moved the Court to exclude other similar acts occurring in 2006, 2007, 2008 and 2009 while he was performing duties as a Pulaski County Deputy Sheriff. [Record No. 43] According to the defendant, "he does not deny being the person involved in the four encounters the Government seeks to introduce or the encounters alleged in the Indictment." *Id.* at p. 3. However, he asserts that the other incidents would not be admissible at trial under Rule 404(b) of the Federal Rules of Evidence. The government has not responded to this motion. But on August 12, 2013, it filed a notice that it intended to seek to introduce the four incidents under Rule 404(b). [Record No. 26] The grounds supporting admission of the other acts were set forth in that notice. Descriptions of the four incidents which are the subject of the defendant's motion to exclude are included in the government's notice at pages 2-9. [*Id.*] It appears that the indictment filed in the Western District of Kentucky involves one of the other acts that the government would seek to introduce in this action (*i.e.*, the incident occurring on August 24, 2008, and pertaining to the person identified as "C.F.").

in the Western District of Kentucky. In exchange, the two charges in the Eastern District of Kentucky would be dismissed. Further, the penalty negotiated by the parties would be binding on the Court under Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure. Molen would be sentenced to a three-year term of probation and six months of "modified" home confinement.[3] Although these terms had been negotiated by the time of the November 22, 2013, pre-trial conference, Ron Walker, the Assistant United States Attorney attending the hearing and responsible for prosecuting the case, was very not forthcoming when initially asked to explain the details of the parties' agreement or the government's rationale in dismissing the charges filed in the Eastern District of Kentucky.

After some questioning by the Court, the following exchange occurred with AUSA Walker:

> THE COURT: Would the United States intend to file along with – if that happens, would the United States intend to file a memorandum explaining why dismissal would be in the best interest of the public in this case? This is a civil rights case.
>
> MR. WALKER: It is a civil rights case. We would advise the Court that the basis of the dismissal in this is we would have accomplished our goal in addressing the issue with Mr. Molen's employment, his employment as a law enforcement officer. And those were the primary factors that needed to be considered in this matter.

[Record No. 44; Transcript of 11/22/13 Pre-Trial Conference at p. 5] In other words, the United States was willing to tell the public that, as a result of its actions, the government had managed to have the defendant terminated from his current employment. Period.

---

[3] Paragraph 11 of the Plea Agreement filed in the Western District of Kentucky provides that the defendant will be allowed to attend church services and perform yard work at his home while subject to home confinement.

And after expressing some concern, the Court indicated that further explanation would be necessary if the government, in fact, moved to dismiss the indictment.

> THE COURT: Well, I guess what I'm trying to signal to you – I will just state it straight out. If – if you do file a motion to dismiss, and if it's not – it doesn't explain your rationale, we'll have a hearing so that any alleged victims can come into court, and you can explain to me why dismissal is in the best interest of the public. So I'll leave that to you. If you file a motion to dismiss, you can either explain the rationale in writing, or we can have a hearing on it.

[*Id.* at p. 7]

Several days later, the government obtained approval of the binding plea agreement from the United States District Court for the Western District of Kentucky. It then filed with this Court on December 4, 2013, a pleading which was simply captioned "Motion." The relief identified and requested in the motion is ambiguous. However, it appears that the government seeks leave of Court to file a "Notice of Dismissal" under Rule 48(a) of the Federal Rules of Criminal Procedure.[4] And it apparently presumes that the filing of this notice is enough to accomplish its goal of dismissing the action. It that is the government's assumption, it is clearly mistaken.

Criminal Rule 48 provides two methods for dismissing indictments, informations, or criminal complaints:

> **(a) By the Government.** The government may, *with leave of court*, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

---

[4] While the actual motion only seeks leave to file a Notice of Dismissal, the tendered order and accompanying memorandum seek dismissal of the indictment. The memorandum is captioned "Government's Memorandum in Support of Motion to Dismiss." [Record No. 45] Again, however, the actual motion does not seek the same relief.

**(b) By the Court.** The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:

**(1)** presenting a charge to a grand jury;

**(2)** filing an information against a defendant; or

**(3)** bringing a defendant to trial.

(Italics added for emphasis.) Rule 48, Fed. R. Crim. P.

The language of Rule 48 clearly requires action by the Court in obtaining dismissal whether the action is taken under subparagraph (a) or (b). It is disingenuous to argue that dismissal occurs simply by the filing of a "notice" by the United States. In fact, while the government argues – on the one hand – that the Court has no role to play once it (*i.e.*, the United States) determines to dismiss a criminal action, it admits – on the other hand – that the Court performs a very important function (*i.e.*, determining whether the government is acting in bad faith or contrary to the manifest public interest).[5]

---

[5]  In *United States v. Andrew King*, U.S. Dist. Ct., E.D. Ky., Southern Div. at London, Criminal No. 6: 13-22-DCR, the government sought dismissal of the Indictment after the United States Probation Office declined to recommend diversion. The pleading filed in that action on October 2, 2013, was styled, "Motion of United States for Leave to Dismiss." [*See* Record No.40 therein.] The government did not take the position that the Court lacked authority to deny the motion.

In responding to the Court's inquiry in that case, the Assistant United States Attorney acknowledged the following:

> MR. DOTSON: I think the Court does have some discretion, Your Honor. And when considering this, the United States understands that the Court has to make an independent finding and is to consider several factors, not the least of which is what's in the public interest.
>
> THE COURT: Well, I can only deny the motion if it's clearly contrary to manifest public interest or made in bad faith; is that accurate?
>
> MR. DOTSON: That's correct. Your Honor. That is my understanding as well, Your Honor.

In light of the United States' double-speak in this matter, the government should be cautioned that, while the primary focus of the Court's inquiry under Rule 48 is preventing government harassment of defendants, that is not the Court's only function. A *primary* function is not magically transformed into an *exclusive* function simply because the Department of Justice would like to limit the Court's oversight of its actions.

Likewise, the parties cannot limit the Court's role simply by agreeing to do so. Based on the clear language of Rule 48(a), the United States' assertion that this Court does not have discretion to deny dismissal of an indictment carries no weight. This Court has the authority – and indeed the responsibility – to determine: (i) whether the United States' actions are contrary to the manifest public interest and (ii) whether the government is acting in bad faith. A positive finding regarding either issue may result in the denial of a motion to dismiss. While the Court's inquiry may be difficult (or perhaps impossible) where the government and the defendant are acting in concert, difficulty does not mean that the Court should turn a blind eye to potential improper actions or actions which are clearly contrary to the public's interest.

The Court comes very close to finding that the government's actions are contrary to manifest public interest. In response to the Court's directive, the United States offers several justifications for seeking dismissal of the charges returned by the federal grand jury. First, it represents that the "global disposition" is in the interest of justice and the public because the

---

[Criminal Action No. 6: 13-22-DCR; Record No. 49]

In *United States v. Randy Darren Kendall, Jr.*, U.S. Dist. Ct., E.D. Ky., Central Div. at Frankfort, Criminal No. 3: 08-30-DCR, on the morning of trial, Assistant United States Attorney Ron Walker filed a Motion to Dismiss the indictment pertaining to defendant Randy Kendall after the co-defendant entered a guilty plea to a lesser included offense. [*See* Record Nos. 75 and 78 therein.] Mr. Walker did not argue or infer that the government could dismiss the charges without Court approval.

defendant will be precluded from ever working in law enforcement again. Perhaps. But has the government considered the message it is sending to other law enforcement officials who might be inclined to render "rough justice" when no one is looking or, as alleged in the present case, while witnesses and other law enforcement officials are nearby? Does a term of probation and modified home detention cause others deputy sheriffs to think twice before abusing a belligerent detainee? The answer to these questions would not seem to favor or the United States' position. Contrary to its argument, the fact that the Defendant has publicly admitted that his assault on one victim was criminal and unjustified does not demonstrate that the government is "committed to protecting the civil rights of the citizens in this district." The government's actions merely demonstrate that it is willing to negotiate a deal very favorable to a defendant accused of a several very serious offenses. Likewise, the outcome cannot be said to "serve to deter other law enforcement officers from engaging in similar conduct." Reality belies the government's assertions.

 Next, the United States contends that the outcome of the case maximizes limited judicial resources of the courts and the government. But wouldn't this assertion be correct in every circumstance in which similar action is taken? There is cost associated with every litigation matter. And here, there is no indication that the trial would be prolonged or unduly expensive. Most of the witnesses would appear to be local and much of the 404(b) evidence the government would seek to introduce could be presented without a great deal of effort. The government's attorneys would, however, be required to prepare for trial during the holiday season. In short, this argument is weak at best.

Counsel for the United States also asserts that the decision in this matter was reached after weighing the likelihood of a conviction in light of the lack of corroborating video evidence. Instead of video evidence, the government would be required to rely upon the testimony of victims and other eyewitnesses as well as evidence of similar acts allegedly committed by Defendant Molen. But these facts were known at the time the matter was presented to the federal grand jury. And it is difficult to argue that evidence *might* not be admissible under Rule 404(b) (and, therefore, weaken the government's case) without first obtaining a ruling from the Court on the issue. While an adverse ruling might have tipped the balance in favor of the government's current position, the government never requested a ruling on this issue.

Finally, the United States suggests that consideration for the victims favors the current resolution.[6] It states that, had the matter proceeded to trial, it would have required victims and witnesses "to repeatedly offer personally difficult testimony and undergo potentially embarrassing questions on cross-examination." And while it fails to offer any details supporting its assertion, the government also fails to explain how this would be substantially different than the situation presented in most cases (civil and criminal). It is true that civil rights cases are

---

[6] According to the government, two victims support the global resolution of the cases in the Eastern and Western Districts of Kentucky while one (identified as "D.W.") does not. Count 1 of the Indictment filed with this Court charges that Molen assaulted and injured D.W. on or about October 2, 2009. The United States asserts in footnote 3 of its supporting memorandum that:

> The victims had a right to make a statement about a proposed resolution, but they did not have a "veto" right regarding the government's actions. *See* 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.").

[Record No. 45-1] In light of the government's actions in this case, it is not surprising that victim D.W. chose not to make a statement. Under the circumstances, why would he bother? The United States has made it clear that it is finished with this case.

difficult and often require the presentation of testimony that is unpleasing to witnesses, to jurors charged with weighing the evidence, to attorneys, and to trial judges who must preside over the matter. But under this rationale, the government will also be less inclined to prosecute other equally-difficult cases (*i.e.*, child pornography crimes). Hopefully, "difficulty" has not become the new standard for prosecution in the Eastern District of Kentucky.

In summary, this Court is clearly troubled with the manner in which this case has been handled by the attorneys representing the United States. While the public has an interest in the final resolution of criminal matters, it has a more compelling interest in seeing that justice is done. And undoubtedly, the public interest is not served when the government refuses to disclose the rationale for its actions. Telling the Court that it has no role in overseeing the dismissal of criminal actions is not an acceptable response by the office of the United States Attorney for this district.

The government cannot legitimately argue that the outcome reached in this case will provide any measure of deterrence to others who might be inclined to commit similar offenses. Likewise, the outcome does not provide any measure of protection to the alleged victims. Perhaps a jury would have returned a not guilty verdict on the charges in this case, but at this point, the public will be left to speculate what the result would have been following trial.

But even though this Court has great concerns based on the reasons offered by the government for its actions, it cannot conclude that these actions were taken in bad faith. Likewise, the Court cannot conclude that the outcome is "contrary to the *manifest* public interest." The government is correct in one respect. The United States is not required to prove that its actions are in the *best* interest of the public. It need only provide sufficient reasons to

overcome a very low hurdle due to the limited discretion afforded to the Court under Rule 48(a). While the government might be thankful that its burden is so low, it should not be proud of its actions.

Based on the foregoing discussion, it is **ORDERED** as follows:

1. The United States' motion [Record No. 45] is **GRANTED**.

2. The Indictment filed against Defendant Steven Molen is **DISMISSED**, without prejudice.

3. The Defendant's Motion In Limine to Exclude Evidence Under FRE 404(b) [Record No. 43] is **DENIED** as moot.

4. The trial of this action, previously scheduled to begin on December 17, 2013, is **VACATED** and **CANCELED**.

5. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 5th day of December, 2013.

Signed By:
*Danny C. Reeves* DCR
United States District Judge